UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 01-52 (JRT/SRN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | GOVERNMENT'S RESPONSE TO DEFENSE MOTION TO DISMISS FOR ALLEGED VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE UNITED STATES CONSTITUTION |
| v. | ) | |
| ABDEL-ILAH ELMARDOUDI, Defendant. | ) | |

INTRODUCTION

The United States of America, by and through its attorneys, Rachel K. Paulose, United States Attorney for the District of Minnesota, and William H. Koch, Assistant United States Attorney, hereby files this Memorandum in Opposition to Defendant's Pretrial Motion to Dismiss Indictment for Violation of Double Jeopardy Clause of the United States Constitution (Def. Mot.). [Docket No. 45] No violation of the double jeopardy clause occurred, as the charges faced by Mr. Elmardoudi in Minnesota are not the "same offense" as those charged in Michigan. Alternatively, even if the same conduct formed a basis for charges in both states, the double jeopardy clause does not bar retrial under these circumstances. Accordingly, defendant's motion should be denied.

STATEMENT OF FACTS

Abdel-Ilah Elmardoudi was first arrested on February 7, 2001. He was indicted by a Minnesota grand jury on March 6, 2001. The indictment charged him with: (1) unauthorized access device trafficking from on or about December 1999 through on or about February 6, 2001 in violation of Title 18, United States Code, Sections 1029(a)(2) and 1029(c); (2) possession of unauthorized access devices on or about February 6, 2001 in violation of Title 18, United States Code, Sections 1029(a)(3) and 1029(c); and (3) access device fraud from on or about December 1999

through on or about February 6, 2001 in violation of Title 18, United States Code, Sections 1029(a)(5) and 1029(c).

After arrest, defendant was detained and ordered to remain under house arrest at a halfway house. He was transferred to the 180 Degrees halfway house in Minneapolis. On or about April 19, 2001, Mr. Elmardoudi walked away from his pre-trial detention at the halfway house. The grand jury indicted him for this escape on August 6, 2001, through a superseding indictment. He was arraigned on the superseding indictment on February 13, 2006.

Following the terrorist attacks on September 11, 2001, Mr. Elmardoudi was identified as being involved in a "sleeper cell" in Detroit. His whereabouts still unknown, he was indicted, along with four others, in Michigan. A second superseding indictment was returned in Michigan against Mr. Elmardoudi and others on August 28, 2002. These charges included providing material support to terrorists in violation of Title 18, United States Code, Section 2339A, as well as conspiracy and fraud with regard to visas and identification documents, in violation of Title 18, United States Code, Section 371.

While still in escape status and facing charges in both Minnesota and Michigan, Mr. Elmardoudi was arrested in Greensboro, North Carolina, on November 8, 2002. He was transported to Michigan to face charges there. He was subsequently convicted on the Michigan charges. Mr. Elmardoudi appealed this conviction, filing a motion for a new trial based on an alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963). On August 31, 2004, the United States concurred with Mr. Elmardoudi's motion for a new trial for his document fraud conviction, and brought a motion to dismiss the terrorism-related count, without prejudice. On September 2, 2004, the United States District Court for the Eastern District of Michigan (Southern Division) granted the motion for a new

trial and dismissed the terrorism-related count without prejudice. The United States Attorney's Office for the Eastern District of Michigan decided to not re-charge him.

No later than September 21, 2004, Mr. Elmardoudi's Minnesota counsel expressed her client's interest in a global plea resolution to resolve any potential charges from Michigan, Minnesota, Iowa, North Carolina, or elsewhere. The plea discussions have been ongoing.

Mr. Elmardoudi now argues that the financial crimes for which he is charged in Minnesota formed the essential basis of the terrorism case in Michigan and, therefore, the double jeopardy clause of the Fifth Amendment to the Constitution precludes continuation of the Minnesota prosecution.

## ARGUMENT

### I. The Double Jeopardy Clause Has Not Been Violated Because The Charges Involved Do Not Constitute The "Same Offense."

To support a claim of double jeopardy, a defendant must show that the two offenses charged are in law and fact the same offense. *United States v. Ervasti*, 201 F.3d 1029, 1039 (8th Cir. 2000). To determine whether the charges constitute the "same offense" for double jeopardy purposes, the court applies the *Blockburger* test. *Id*. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The *Blockburger* test "focuses on the statutory elements of the offenses, rather than the evidence presented at trial." *United States v. Gamboa*, 2006 WL 508321, 8 (8th Cir. 2006) (quoting *Flittie v. Solem,* 775 F.2d 933, 937 (8th Cir.1985)). In addition, analysis of a double jeopardy claim

requires examination of not only the statutory provisions at issue, but also the specific charges in the indictment. *Id*. (citing *Garrett v. United States,* 471 U.S. 773, 786 (1985)).

Specifically, Mr. Elmardoudi alleges that the same conduct is the basis for the both the financial crimes at issue in the Minnesota prosecution and the terrorism-related charges from the Michigan prosecution. However, the access device fraud charges are distinct from the charge(s) of providing material support to terrorists. These crimes were different in both time and place, and do not relate to the same act or transaction. *See United States v. Felix*, 503 U.S. 378, 379 (1992) (finding differences in time and place of crimes supported finding that substantive drug charges and conspiracy charges were separate offenses). Further, an examination of the statutory text, which shows that proving a defendant provided support to terrorists requires proof of separate, additional facts distinct from those required for the access device fraud, establishes them as being separate offenses under *Blockburger*. For instance, a violation of the access device statute found at § 1029(a)(2) includes "knowingly and with intent to defraud traffics in or uses one or more unauthorized access devises during any one-year period, and by such conduct obtains anything of value aggregating $1,000." 18 U.S.C. § 1029(a)(2). The facts which would prove unauthorized use of an access device to obtain such funds differ significantly from those necessary to demonstrate that the defendant provided material support "knowing or intending that they are to be used in preparation for, or in carrying out" terrorist activities. *See* 18 U.S.C. 2339A. The terrorism-related statute does not necessitate a showing that the material support was obtained illegally, and requires that the support be intended for specific purposes. Thus, the *Blockburger* analysis demonstrates that the charges are not the "same offense" and do not result in a violation of the double jeopardy clause.

Furthermore, even if the financial crimes provided a basis for the case in Michigan, "mere overlap in proof between two prosecutions does not establish a double jeopardy violation." *United States v. Felix*, 503 U.S. 378, 379 (1992) (quoting *Dowling v. United States,* 493 U.S. 342.) Thus, even if the Michigan prosecutors used evidence related to the access device fraud charges to prove the terrorism-related charges, use of such evidence does not result in a violation of the double jeopardy clause. First, the *Blockburger* analysis focuses on the statutory charges, not the evidence presented. Second, any overlap in proof that might exist is not enough to show a violation of the double jeopardy clause. The crimes charged are indeed separate offenses under the *Blockburger* analysis, and even if evidence regarding financial crimes was used in prosecution for other charges, this is not enough to cause a double jeopardy violation.

II. <u>Even If The Same Underlying Conduct Forms The Basis For All Charges, Retrial Is Allowed.</u>

Double jeopardy does not bar retrial where the mistrial was the result of *Brady* violations. *United States v. Curry*, 328 F.3d 970, 973 (8th Cir. 2003). Only where the governmental conduct in question is intended to "goad" a defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial. *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982). *See also United States v. Washington*, 198 F.3d 721 (8th Cir. 1999) (finding that without evidence of "devious intent" by prosecution to coerce a motion for a mistrial, double jeopardy did not bar retrial).

Mr. Elmardoudi was granted a motion for a new trial on the fraud charges and a motion to dismiss, without prejudice, the terrorism-related charges, after a finding of *Brady* violations. Subsequently, the Michigan prosecutors decided not to re-charge him. The government had initially obtained a conviction, and it was only on appeal that this conviction was overturned. Therefore, the government had no need to "goad" Mr. Elmardoudi into moving for a mistrial, since the case had,

in fact, been decided in favor of the prosecution. Without a showing of bad intentions on the part of the prosecution to specifically "goad" a defendant to move for a mistrial, double jeopardy does not attach. Consequently, Mr. Elmardoudi may be retried.

CONCLUSION

Based upon the facts and circumstances outlines above and the proceedings to date in this matter, defendant's motion should be denied.

Dated: April 5, 2006

Respectfully submitted,
RACHEL K. PAULOSE
United States Attorney

s/William H. Koch
BY: WILLIAM H. KOCH
Assistant U.S. Attorney
Attorney ID No. 22523X