## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 01-52 (JRT/SRN) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| ABDEL-ILAH ELMARDOUDI, | |
| Defendant. | |

William H. Koch, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Douglas B. Altman, **ALTMAN & IZEK**, 901 North Third Street, Suite 140, Minneapolis, MN 55401, for defendant.

Defendant Abdel-Ilah Elmardoudi has filed a motion to dismiss and a motion for change of custody conditions.[1]  In a Report and Recommendation dated June 1, 2006, United States Magistrate Judge Susan Richard Nelson recommended that defendant's motions be denied.  Defendant timely objected to the Report and Recommendation.  For

---

[1] Defendant also filed a Motion to Dismiss for Violation of the Double Jeopardy Clause of the United States Constitution [Docket No. 45] and a Motion for Leave to File Additional Motions and Additional Support for Current Motions [Docket No. 46].  The Magistrate Judge recommended that the motion to dismiss on double jeopardy grounds be denied, and defendant has not objected to this recommendation.  Accordingly, the Court adopts the well-reasoned recommendation of the Magistrate Judge.  The Magistrate Judge recommended that this Court deny the other motion as moot because the Magistrate Judge already permitted supplemental briefing at the motions hearings.  The Court agrees.

the reasons discussed below, the Court grants the motion to dismiss the indictment and denies as moot, for now, the motion for change of custody conditions.

## BACKGROUND

Abdel-Ilah Elmardoudi was first arrested in Minnesota on February 7, 2001, nearly five and one-half years ago. He was indicted by a federal grand jury on March 6, 2001. The indictment charged him with unauthorized access device trafficking, possession of unauthorized access devices, and access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2), 1029(a)(3), 1029(a)(5) and 1029(c). Defendant was arraigned on these charges on April 4, 2001. At that time, defendant was represented by Assistant Federal Public Defender Katherine Menendez.

After his arrest on the crimes charged in the indictment, defendant was detained and ordered to remain under house arrest at a halfway house in Minneapolis, Minnesota. On April 19, 2001, defendant walked away from the halfway house and fled the jurisdiction. A grand jury indicted him for this escape on August 6, 2001 through a superceding indictment.

A second superceding federal indictment was returned in the Eastern District of Michigan against defendant and others on August 28, 2002, while defendant was on escape status. These charges included providing material support to terrorists, in violation of 18 U.S.C. § 2339A, as well as conspiracy and fraud with regard to visas and identification documents, in violation of 18 U.S.C. § 371.

Defendant was arrested in North Carolina on November 4, 2002, and he was transported to Michigan to face the charges there.  He was convicted of those charges. Defendant appealed the conviction, filing a motion for a new trial based on alleged *Brady* violations.  This motion prompted a government investigation, which resulted in the prosecution joining the defense motion for a new trial on the document fraud conviction and bringing a motion to dismiss the terrorism charges.  The district court granted the motion for a new trial on the document fraud conviction and dismissed the terrorism charges without prejudice on September 2, 2004.  The lead federal prosecutor in the Michigan case has since been indicted for obstruction of justice and conspiracy in connection with his activities in defendant's trial.

Following the dismissal of the Michigan terrorism charges, the parties began discussing a global plea agreement.  The parties dispute when these plea negotiations started, but agree that they began no later than September 21, 2004.  The global resolution would have encompassed whatever was left in the Eastern District of Michigan case, the District of Minnesota case, and a Northern District of Iowa case.  The discussions included defendant's counsel in Michigan, Bill Swor; the Assistant United States Attorney ("AUSA") prosecuting the case in Minnesota, Bill Koch; as well as Menendez.  A proffer agreement was entered on October 12, 2004.  The agreement was signed by defense attorneys Swor and Menendez, as well AUSA Koch, and AUSA Eric Straus of the Eastern District of Michigan and AUSA Kandice Wilcox of the Northern District of Iowa.  According to the prosecution, the plea agreement's execution was dependant on defendant "passing" a polygraph test.

In December 2004, the Iowa prosecutor had defendant transferred to Iowa.  He was placed in a maximum-security setting and remained in Iowa for three months.  After multiple phone calls from the Michigan defense counsel to the Iowa prosecutor, defendant was transferred back to Michigan on March 5, 2005.

In June 2005, defendant wrote this Court a letter expressing his frustration about government inactivity on his case.  He asserted that his right to due process was being violated because the prosecution had had months to prepare a plea agreement or send him back to Minnesota to face charges, but had done neither.  This letter was not received by the prosecutors or his defense counsel.

On July 19, 2005, defendant filed a writ of habeas corpus in the Eastern District of Michigan.  This prompted discussion between Menendez and Koch, and the parties determined that the need for polygraph examinations was the source of on-going delay.

On August 5, 2005, defendant underwent polygraph examinations.  The prosecution believed that defendant was truthful throughout the examination.  During this time, Menendez was told that the plea language was being worked out but required approval by a number of offices and that "it should not be too much longer."

The proposed plea agreement was provided to Swor on September 9, 2005.  The parties continued negotiation, and the prosecution sent defense counsel an amended plea agreement on September 27, 2005.  The prosecution contends that the defense never formally responded to the amended plea agreement until the defense asked for defendant's transfer back to Minnesota in January 2006.

In fall of 2005, defendant sent this Court another letter explaining his circumstances and asserting that his rights to a speedy trial were being violated.  He states that he demanded through his counsel that he be transferred to Minnesota to face trial on the pending charges.  In letters dated November 11, 2005 and December 13, 2005, defendant wrote his defense counsel indicating that he wanted to be released for violation of his rights to a speedy trial and "not part of any Rule 11 or part of any negotiation with the government."

On January 3, 2006, Swor sent an email to Menendez, stating that he had recently informed the Office of the United States Attorney that defendant wished to be immediately moved to Minnesota to face his charges there.  From January 26, 2006 to February 1, 2006, defendant was being transported to Minnesota.  On February 13, 2006, defendant was arraigned on the superceding indictment.

On February 28, 2006, defendant filed several pre-trial motions, including the motions currently before this Court.

## ANALYSIS

## I.     MOTION TO DISMISS FOR SPEEDY TRIAL VIOLATIONS

The Court has conducted a de novo review pursuant to 28 U.S.C. § 636 (b)(1)(C) and D. Minn. LR 72.2(b) of defendant's objections to the Report and Recommendation on the motion to dismiss.

###### A.      The Speedy Trial Act

Under the Speedy Trial Act, a federal criminal defendant must be brought to trial within 70 days of his indictment or arraignment (whichever is later).   18 U.S.C. § 3161(c)(1); *see also United States v. Yerkes*, 345 F.3d 558, 561 (8th Cir. 2003). Certain days, however, may be excluded from the 70-day calculation. *Id.*; 18 U.S.C. §§ 3161(d) and 3161(h).   After these days are excluded, if the total number of non-excludable days exceeds 70, then district court must dismiss the indictment upon the defendant's motion. *Yerkes*, 345 F.3d at 561; 18 U.S.C. § 3162(a)(2).   The defendant has the burden of proof to support the motion, with the exception of the exclusion of time under section 3161(h)(3).   18 U.S.C. § 3162(a)(2).

The Magistrate Judge concluded that a total of 21 non-excludable days accrued since defendant's first arraignment on April 4, 2001.   As explained below, the Court concludes that at least 74 non-excludable days accrued and therefore grants defendant's motion to dismiss the indictment.

The Court agrees with the Magistrate Judge that defendant's speedy trial "clock" began ticking at his arraignment on April 4, 2001.   *See* 18 U.S.C. § 3161(c)(1).   The Court also agrees that the clock immediately thereafter stopped because defendant filed pretrial motions on that same day.   *See* 18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from any pretrial motion).   The order on the pretrial motions was issued on April 13, 2001, and from that day to April 19, 2001, 6 non-excludable days accrued because defendant was in pretrial detention with no pending motions.   On April 19, 2001, defendant fled the halfway house, which immediately stopped the clock.   *See* 18 U.S.C.

§ 3161(h)(3)(A) (excluding delay resulting from the absence or unavailability of the defendant).   The Magistrate Judge concluded that the clock remained stopped until defendant was arraigned on the superceding indictment over four years later on February 13, 2006.  On this point, the Court disagrees.

The Speedy Trial Act does not specifically exclude the time between the superceding indictment and arraignment, but the Magistrate Judge relied upon case law from this circuit in finding such an exclusion of time.  *See Yerkes*, 345 F.3d at 561 (excluding 10 days between superceding indictment and arraignment); *United States v. Van Someren*, 118 F.3d 1214  (8th Cir. 1997); *United States v. Goodman*, 2006 WL 1134761 (D. Minn. April 27, 2006) (excluding 9 days between superceding indictment and arraignment).  The Eighth Circuit addressed the issue for the first time in *United States v. Van Someren*, 118 F.3d at 1219.  In *Van Someren*, the Circuit held that the district court properly excluded 13 days between the superseding indictment and arraignment.  *Id.* at 1219.  The Eighth Circuit reasoned that the filing of a superseding indictment has the same effect as dismissing an original indictment and filing a new indictment, and therefore the filing of the superceding indictment triggers an exclusion under section 3161(h)(6), even if prosecution does not file a motion to dismiss the original indictment.  *Id.* (citing *United States v. McKay*, 30 F.3d 1418, 1419-20 (11th Cir. 1994)).

The Speedy Trial Act includes a comprehensive list of express exclusions, and the United States Supreme Court has explained that Congress' failure to exclude certain periods of time should be considered a judgment that those periods are to be included in

the speedy-trial calculation.  *United States v. Rojas-Contreras*, 474 U.S. 231, 239 (1985).

While the Eighth Circuit has held that a period of less than two weeks between

superceding indictment and arraignment can be excluded under section 3l61(h)(6), the

Court believes that this holding cannot be expanded to exclude a period of over four

years without frustrating the purposes of the Speedy Trial Act.  Indeed, the Court has

found no case law permitting such a lengthy delay between superceding indictment and

arraignment.  Accordingly, the Court cannot use section 3161(h)(6) to exclude the days

between the superceding indictment and arraignment and must consider whether those

days are excludable for other reasons.

As explained above, the speedy trial clock stopped when defendant walked away

from the halfway house.  Defendant was arrested on November 4, 2002.  Upon his arrest,

defendant was immediately transported to the Eastern District of Michigan to face

charges there, and the clock remained stopped for the entirety of the Michigan

proceedings.  *See* 18 U.S.C. § 3161(h)(1)(D) (excluding delay resulting from trial with

respect to other charges against the defendant).  On September 2, 2004, the Michigan

terrorism charges against defendant were dismissed, so this date marks the end of the

Michigan proceedings.  The Magistrate Judge concluded that the entire period from

September 2, 2004 until January 3, 2006 should be excluded because the parties were

engaged in plea negotiations.  While the Court recognizes the well-reasoned and detailed

analysis in the Report and Recommendation, the Court cannot agree that this entire

period is excludable.

The Eighth Circuit has held that time spent on plea negotiations is excludable as a "proceeding involving defendant" under section 3161(h)(1).  *Van Someren*, 118 F.3d at 1218-19.   In *Van Someren*, the Circuit explained that a number of circuits have determined that time expended on plea negotiations can be excluded under section 3161(h)(1).  *Id.* at 1218 (citing *United States v. Montoya*, 827 F.2d 143 (7th Cir. 1987); *United States v. Bowers*, 834 F.2d 607 (6th Cir. 1987); *United States v. Fields*, 39 F.3d 439, 445 (3rd Cir. 1994)).   Section 3161(h)(1) provides for the exclusion of "[a]ny period of delay resulting from other proceedings concerning the defendant . . . ."  18 U.S.C. § 3161(h)(1).  The statute provides a list of proceedings that can be excluded under this section but specifically provides that the exclusions are "not limited to" that list.  *Id.*

Here, the parties do not dispute that time spent in active, good faith plea negotiation is excludable, but the parties do not agree when plea negotiations started and ended.  The Court examines each disputed period separately.

The first period is from September 2, 2004 to September 21, 2004.  Menendez testified by affidavit that "[i]n September or October of 2004, I had conversations with William Swor, Abdel-Ilah Elmardoudi, and William Koch, the Assistant United States Attorney assigned to this case in Minnesota.  Our discussions were about the possibility of resolving the pending Minnesota charges as part of a global plea agreement."  The parties do not know for sure when defendant first expressed interest in a global plea

agreement, but the parties agree that it is no later than September 21, 2004.[2]  The Magistrate Judge concluded that exclusion of the period of September 2, 2004 to September 21, 2004 is appropriate because plea negotiations were ongoing during this period.

The Court cannot conclude that exclusion of this period is justified based on the evidence in the record.  The prosecution does not contend that this entire period can be excluded.  Rather, the prosecution explains that the "parties now agree global plea discussions began no later than September 21, 2004."  (Govt's Resp. To Def.'s Supp. Mem. at 7.)  Acknowledging its uncertainty about the start of the plea negotiations, the prosecution calculates "at most" 19 non-excludable days during this period.  (Gov't's Resp. To Def.'s Speedy Trial Mot. at 8.)

Even if defendant expressed interest in a settlement prior to September 21, 2004, it is simply not believable that on September 2, 2004, the very day that the Eastern District of Michigan charges were dismissed, the parties engaged in plea negotiations with the level of formality and substance that could allow them to be construed as "other proceedings concerning the defendant."  18 U.S.C. § 3161(h)(1).  Indeed, the proceedings listed in section 3161(h)(1) include examinations, trials, pretrial motions, interlocutory appeals, transportation of defendants, and consideration by the courts of plea agreements

---

[2] In defendant's calculation of non-excludable time [Docket No. 56], defendant lists the period of September 2, 2004 to September 21, 2004 as non-excludable because of "Preliminary settlement discussions."  Defendant later expresses that the parties agreed that 19 non-excludable days accrued between September 2, 2004 and September 21, 2004 because September 21, 2004 was the date the defense expressed interest in the global settlement.  Def.'s Mem. In Supp. Of Speedy Trial Mot. at 6.

and motions.  *Id.*  Each of these events has a certain level of formality, a definite start and end period, and relatively short duration.

The Eighth Circuit has not discussed the requisite nature or quality of plea negotiations needed to qualify as excludable days under section 3161(h)(1).  However, the facts of *Van Someren* suggest a narrow reading for the exclusion.  *See Van Someren*, 118 F.3d at 1215, 1218.  In *Van Someren*, the Circuit began counting the period of excludable time from the defendant's receipt of a letter detailing the terms of a proposed plea agreement.  *Id*.  The plea negotiations ended 14 days later when the parties submitted the signed plea agreement to the Court for approval.  *Id.*  It is significant that the Eighth Circuit excluded a relatively short period of time for plea negotiations, and started the excludable time period only after defendant received detailed information.  *See id*.  The situation here is distinguishable because there is nothing in the record to indicate that defendant had any information about the terms of a proposed plea agreement during the period of September 2, 2004 to September 21, 2004.  Accordingly, the Court holds that 19 non-excludable days accrued during this time period.

Defendant does not dispute that the parties were in active plea negotiations from September 21, 2004 to November 1, 2004.  During this time period, the parties entered into a proffer agreement.  In addition, a draft plea agreement was prepared (but not presented to defendant at this time).  The Court therefore excludes this time spent on plea negotiations under section 3161(h)(1).

The next period at issue is from November 1, 2004 through July 26, 2005.  The parties largely agree on what transpired during this period.  The dispute lies in whether

these events and the communications between the parties can be characterized as plea negotiations.   The record indicates that the only communications on a draft plea agreement between the defense and prosecution were in March 2005.  Menendez states in her affidavit that in March 2005 she "spoke with William Koch . . . who stated that he was prepared to move forward with the global settlement, and had been working on language for the plea agreement.  He believed that the on-going source of delay was the United States Attorney's office in the Northern District of Iowa."

Also during this period, in June 2005, defendant wrote this Court a letter expressing his frustration about government inactivity on his case.  Menendez also stated that defendant had on multiple occasions expressed to her his frustration with the delay in his case and expressed his desire to consider a plea in Minnesota.  The final event of this period occurred on July 19, 2005, when defendant filed a writ of habeas corpus in the Eastern District of Michigan.  The parties agree that the filing of this habeas petition prompted the parties to engage in active plea negotiations starting on July 26, 2005.

The Magistrate Judge concluded that from November 1, 2004 through July 26, 2005, "plea negotiations were ongoing, albeit moving slowly, primarily due to poor communication from the Iowa U.S. Attorney's Office and the difficulty of procuring a Secret Service polygrapher."   In his objections to the Report and Recommendation, defendant argues that no substantive progress on a negotiated plea agreement occurred during this time period, and that this time therefore cannot be excluded from the speedy trial calculations.

The Court finds nothing in the record to show that substantive progress on the plea agreement occurred during this period.  Koch's isolated statement to Menendez in March 2005 that he had been working on language for the plea agreement is likely insufficient to show that plea negotiations had been ongoing.  On the other hand, there is no evidence that defendant unambiguously communicated to his counsel or the prosecution his desire to abandon plea negotiations at any time during this period.[3]  As explained above, the Eighth Circuit has not specified the requisite quality of plea negotiations needed to qualify for an exclusion under section 3161(h)(1).  But because defendant did not expressly state that he did not want to continue plea negotiations, the Court is inclined to hold that the period from November 1, 2004 through July 26, 2005 is excludable under section 3161(h)(1).  However, the Court need not decide this close issue because, as explained below, even if this period is excluded, the Court concludes that a total of more than 70 non-excludable days accrued during the pendency of this case.

The parties agree that plea negotiations were ongoing from July 26, 2005 through October 15, 2005.  During this period, defendant underwent polygraph examinations, which the prosecution required for execution of the plea agreement.  Defendant was presented with two proposed plea agreements in September 2005, and counsel engaged in some settlement discussions.  The Court therefore excludes this time spent on plea negotiations under section 3161(h)(1).

---

[3] Defendant testified at the motions hearing before the Magistrate Judge that it was in March 2005 that he decided to "turn back" and face charges in Minnesota.  However, the record does not show that he communicated to his counsel and the prosecution his desire to abandon plea negotiations during this period.

The final period in question is from October 15, 2005 through January 3, 2006. Defendant argues that the prosecution knew or should have known by mid-October 2005 that there was no chance of negotiating a plea. The record does indicate that defendant had on multiple occasions communicated to his defense counsel that he would not agree to the terms of the plea agreement. For example, on November 11, 2005, defendant wrote a letter to Swor stating, "I want to make sure that my release is not part of any Rule 11 or part of any negotiation with the government." However, the Magistrate Judge found, and this Court agrees, that the prosecution was not aware that defendant had rejected settlement efforts until January 3, 2006. The Court holds that the plea negotiations were ongoing from October 15, 2005 until the prosecution received on January 3, 2006 an unambiguous rejection of the plea agreement by the defense. The Court therefore excludes this period under section 3161(h)(1).

From January 3, 2006 to January 26, 2006, defendant awaited transfer to Minnesota while the government processed the request. The Court concludes, and the parties do not dispute, that 23 non-excludable days accrued during this period. The period from January 26, 2006 to February 1, 2006 is excludable because defendant was being transported from Michigan to Minnesota. *See* 18 U.S.C. § 3161(h)(1)(H) (excluding delay resulting from transportation of any defendant from another district). On February 2, 2006, defendant made an appearance in Minnesota, and he was in pre-trial detention without pending motions until February 28, 2006. The Court concludes that 26 non-excludable days accrued during this period.

The clock stopped on February 28, 2006 because defendant filed pretrial motions on that day.  The Speedy Trial Act excludes all the time between the filing of pretrial motions and the hearing on the motions.  18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from any pretrial motion); *see United States v. DeGarmo*, 450 F.3d 360, 364 (8th Cir. 2006).  Moreover, up to 30 days after the hearing is excludable if the court has the motions under advisement.   18 U.S.C. § 3161(h)(1)(J) (excluding delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court).  Here, the clock was stopped from the filing of the pretrial motions on February 28, 2006 until the Report and Recommendation was issued on June 1, 2006.  The filing of a report and recommendation "in essence serves to re-file the motions" together with the magistrate judge's study of them, with the district court.  *DeGarmo*, 450 F.3d at 364 (quoting *United States v. Long*, 900 F.2d 1270, 1275 (8th Cir. 1990)).  The clock does not re-start until all briefing upon the objections is complete, and then a new 30-day period begins, during which the district court can take the motions under advisement.  *Id.*  Here, a new 30-day period began on July 3, 2006, when the prosecution filed its response to the objections.  The clock remained stopped until the date of this Order.

As the table below summarizes, at least 74 non-excludable days accrued from the date of defendant's arraignment on April 4, 2001 to the date of this Order.  Accordingly, the Court must grant defendant's motion to dismiss the indictment.

| Time Period | Event | Non-Excludable Days |
|---|---|---|
| April 4, 2001 to April 13, 2001 | Arraignment, filed pretrial motions, pretrial motions under advisement | 0 |
| April 13, 2001 to April 19, 2001 | Order issued on pretrial motions, pretrial detention with no pending motions | 6 |
| April 19, 2001 to Nov. 4, 2002 | Fled halfway house, remained on escape status | 0 |
| Nov. 4, 2002 to Sept. 2, 2004 | Arrested, faced charges in Michigan | 0 |
| Sept. 2, 2004 to Sept. 21, 2004 | Michigan charges dismissed, active plea negotiations not yet initiated | 19 |
| Sept. 21, 2004 to Nov. 1, 2004 | Plea negotiations: entered into proffer agreement and prepared draft plea agreement | 0 |
| Nov. 1, 2004 to July 26, 2005 | Transferred to Iowa, then back to Michigan, one conversation about plea negotiations in March 2005 | 0[4] |
| July 26, 2005 to Oct. 15, 2005 | Plea negotiations: exchanged draft plea agreements, underwent polygraph exams | 0 |
| Oct. 15, 2005 to Jan. 3, 2006 | Plea negotiations stalled but prosecution not informed that plea agreement rejected | 0 |
| Jan. 3, 2006 to Jan. 26, 2006 | Prosecution informed that plea agreement rejected, defendant awaited transfer to Minnesota | 23 |
| Jan. 26, 2006 to Feb. 1, 2006 | Transported from Michigan to Minnesota | 0 |
| Feb. 2, 2006 to Feb. 28, 2006 | Appearance in Minnesota, arraignment on superceding indictment, pretrial detention without pending motions | 26 |
| Feb. 28, 2006 to June 1, 2006 | Pretrial motions filed, under advisement by Magistrate Judge | 0 |
| June 1, 2006 to Aug. 2, 2006 | Report and Recommendation issued, briefing on objections, under advisement by this Court | 0 |
| TOTAL | | 74 |

---

[4] If the Court were to decide the issue of whether the time period from November 1, 2004 to July 26, 2005 could be excluded under section 3161(h)(1) and decide not to exclude the time, 267 days would be added to the calculation of non-excludable time.

**B.     Constitutional Right To A Speedy Trial**

Sixth Amendment challenges are reviewed separately from the Speedy Trial Act. *United States v. Thirion*, 813 F.2d 146, 154 (8th Cir. 1987).  The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ."  U.S. Const. Amend. VI.  The Supreme Court has identified four relevant inquiries in a claim involving the Sixth Amendment right to a speedy trial: 1) whether delay before trial was uncommonly long; 2) whether the government or the criminal defendant is more to blame for that delay; 3) whether, in due course, the defendant asserted his right to a speedy trial; and 4) whether he suffered prejudice as a result of the delay.  *Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

To trigger speedy trial analysis, the defendant must allege that the interval between accusation and trial has crossed a line "dividing ordinary from 'presumptively prejudicial' delay."  *Id.* at 651-52.  The Eighth Circuit has held that a 37-month delay is presumptively prejudicial.  *United States v. Walker*, 92 F.3d 714, 717 (8th Cir. 1996); *cf. United States v. Titlbach*, 339 F.3d 692, 699 (8th Cir. 2003) ("A delay approaching a year may meet the threshold for presumptively prejudicial delay . . . .").  The overall delay in this case from April 2001 until February 2006 is roughly 58 months, and the Court therefore concludes that this length of time is presumptively prejudicial and warrants speedy trial analysis.

The Magistrate Judge concluded that defendant's Sixth Amendment rights had not been violated.  She reasoned that although the delay before trial was uncommonly long

and defendant properly asserted his right to a speedy trial, defendant's actions were the main cause of the delay and he suffered no prejudice due to the unavailability of witnesses or evidence.   The Court agrees with the Magistrate Judge that the delay was uncommonly long and that defendant properly asserted his rights to a speedy trial. However, the Court disagrees with the Magistrate Judge on the other two relevant inquiries, and concludes that the delay in this case violated defendant's rights under the Sixth Amendment.

The Court concludes that the prosecution is to blame for most of the delay in this case.   Of course, defendant is solely responsible for about 19 months of the delay, which occurred while defendant was on escape status.   As for the approximately 21 months of delay from the Michigan trial, it is difficult to assign blame.   While defendant was convicted on the charges, the case was ultimately dismissed on an alleged *Brady* violation.   It is significant that the lead prosecutor in the Michigan case has since been indicted for obstruction of justice and conspiracy in connection with his activities in defendant's trial.   It is also significant that the prosecution never sought to bring back those charges.   Based on these considerations, the Court concludes that the prosecution bears most of the responsibility for this delay.

The final 17 months of delay tip the balance of blame onto the prosecution.   As explained above, the Court has found that there were long periods where no substantive progress on the plea agreement occurred.   Everyone agrees that the Iowa prosecutor was primarily responsible for shepherding along the plea negotiations.   The Court recognizes that completion of a global plea agreement in this case required coordination with many

people and agencies.   But a global plea agreement was in the interests of all parties involved, and defendant's continued desire for a global plea agreement cannot provide an excuse for the prosecution to engage in a delay of the magnitude involved here.[5]

The Court must also inquire as to whether the defendant suffered prejudice as a result of the delay.   In assessing whether the defendant was prejudiced by the delay, the Court considers the interests that the constitutional right to a speedy trial protects.  *United States v. Sprouts*, 282 F.3d 1037, 1043 (8th Cir. 2002). The fundamental constitutional right to a speedy trial serves to: 1) prevent undue and oppressive incarceration prior to trial; 2) minimize anxiety and concern accompanying a public accusation; and 3) limit the chance that a lengthy delay will prejudice the defendant's ability to defend himself.  *Id.* Almost without exception since September 2, 2002, defendant has been housed in maximum-security settings with few privileges and solitary confinement with little or no contact with other prisoners.   In addition, defendant has testified to having suffered anxiety and panic attacks as a result of the delay in prosecution.   Defendant also asserts that he has lost contact with two witnesses, but he has conceded that these witnesses would not be able to provide a defense to the crimes charged.   While the Court finds that he has suffered little or no prejudice in terms of unavailability of witnesses or evidence,

---

[5] The prosecution's delay between the proffer session in mid-October 2004 until the filing of the habeas petition on July 19, 2005 seems impossible to justify.  The prosecution made no arrangement for the polygraph examinations of defendant, even though the prosecution made execution of a plea agreement contingent on defendant "passing" a polygraph examination.

the Court concludes that he has suffered prejudice due to the uncommonly long pretrial detention under maximum-security conditions.

Accordingly, the Court concludes that defendant's right to a speedy trial under the Sixth Amendment has been violated.

## C. Dismissal Without Prejudice

The Court has discretion to determine if the dismissal is with or without prejudice. *United States v. Blankenship*, 67 F.3d 673, 675 (8th Cir. 1995). "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1). In addition, courts should consider the presence or absence of prejudice to the defendant resulting from the delay. *United States v. Becerra*, 435 F.3d 931, 935 (8th Cir. 2006).

The Court concludes that dismissal without prejudice is warranted here. First, both the nature of the conduct alleged and the penalties attached to the alleged offenses demonstrate that defendant is charged with serious felony offenses. Second, while it appears that the speedy trial violations were due to the prosecution's negligence, there is no indication that the negligence was in reality an attempt to obtain a tactical advantage. *See United States v. Koory*, 20 F.3d 844, 847-848 (8th Cir. 1994). Third, dismissing the case without prejudice would provide the prosecution the opportunity to seek a new indictment and pursue this possibly important case, while at the same time furthering the

interests of the Speedy Trial Act by making clear that the prosecution's delay in this case was not excusable.  Finally, the fact that defendant has suffered little or no prejudice in terms of unavailability of witnesses or evidence also warrants dismissal without prejudice.  *See Becerra*, 435 F.3d at 936.

## II.     MOTION FOR CHANGE OF CUSTODY CONDITIONS

Defendant moves for a change of custody conditions for the pendency of this case. Because the Court grants defendant's motion to dismiss, the Court denies this motion as moot.  If the prosecution chooses to seek a new indictment and to secure defendant's pretrial detention, the Court will address custody conditions at that time.

## CONCLUSION

Undeniably, the complexity of managing indictments in three separate federal districts at the same time contributed significantly to the extraordinary delays in the prosecution of Mr. Elmardoudi.  The fact that it is hard work, however, does not excuse long delays.  Nor does the fact that one of the indictments charged the defendant with terrorism-related counts excuse this excessive delay.  Delay has real effects on defendants, in particular the increasing unavailability of witnesses and other evidence that may permit a defendant to clear himself of charges.  Delay also contributes to a general sense of discouragement that the judicial process will never end, discouragement that seems evident in the correspondence from Mr. Elmardoudi.  These are among the many important reasons why the Framers included a speedy trial requirement in the Sixth

Amendment and why the Congress gave effect to that right in the Speedy Trial Act.  If the prosecution decides to seek a re-indictment in this case and the grand jury agrees, the Court will handle the matter on an expedited basis.

## ORDER

Based on the foregoing and all of the records, files, and proceedings herein, the Court **SUSTAINS in part** the objections of defendant [Docket No. 80] and **ADOPTS in part** and **REJECTS in part** the Magistrate Judge's Report and Recommendation [Docket No. 73].  Accordingly, **IT IS HEREBY ORDERED** that:

1.      Defendant's Motion to Dismiss on Speedy Trial and United States Constitutional Violations [Docket No. 44] is **GRANTED**.  The superseding indictment against defendant [Docket No. 36] is **DISMISSED WITHOUT PREJUDICE**.

2.      Defendant's Motion to Dismiss for Violation of Double Jeopardy Clause of the United States Constitution [Docket No. 45] is **DENIED**.

3.      Defendant's Motion for Leave to File Additional Motions and Additional Support for Current Motions [Docket No. 46] is **DENIED AS MOOT**.

4.      Defendant's Pretrial Motion for Change in Custody Conditions [Docket No. 43] is **DENIED AS MOOT**.


DATED:    August 2, 2006                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                  United States District Judge